

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-27-2009

# Singh v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-2843

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Singh v. Atty Gen USA" (2009). *2009 Decisions.* Paper 1657.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1657

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 08-2843
_____

HARWINDER SINGH,
                         Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES
_____

Petition for Review of an Order of the
United States Department of Justice
Board of Immigration Appeals
(Agency No. A98 177 035)
Immigration Judge:  Honorable Frederic Leeds
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 13, 2009

Before:  RENDELL, FUENTES and NYGAARD, Circuit Judges.

(Filed March 27, 2009)
_____

OPINION OF THE COURT
_____

PER CURIAM

Harwinder Singh petitions for review of an order of the Board of Immigration

Appeals (BIA), which dismissed his appeal from an Immigration Judge's (IJ's) final

removal order.  We will deny the petition for review.

Singh is a native and citizen of India. In removal proceedings, Singh conceded that he was removable, but sought asylum and related relief from removal, based on his fear of persecution due to his political involvement. Singh testified that he had been a member of the Shiromani Akali Dal Mann party (SAD Mann) since 1998. He was in charge of gathering groups of people to inform them about Sikh rights. On May 13, 2004, Singh was talking to two friends at a bus stop about discrimination experienced by Sikhs. Two or three Hindus that Singh knew from his neighborhood, along with others, about six men, beat him and his friends. Singh was injured near his eyebrow and on his right shoulder. He sought medical treatment and required stitches. Singh reported the incident to the police, and identified the assailants he knew by name, but the police did nothing. Singh also reported the incident to a senior SAD Mann member.

Singh testified that he was arrested on August 25, 2004. The police accused him of helping to demolish a Hindu temple, which he said was completely false. Singh testified that he was held for five days, beaten, and subjected to foul language. Some SAD Mann members went to the police, told them that Singh was not involved in the incident, and Singh was released. Singh stated that his injuries were only internal, and he did not seek medical treatment. His father tried to obtain a copy of an arrest warrant, but was unsuccessful.

Singh was beaten a second time on January 26, 2005 at a vigil at the Sikh temple. Hindu villagers and some men wearing police uniforms beat him. He received injuries to

2

his legs, and his head was bandaged when he went to a hospital. He then went to his uncle's house, where he was arrested two days later, on January 28, 2005. The police falsely accused him of gathering Sikhs to plan to beat up Hindus. Singh was held in custody for ten days and beaten. His jaw was broken and some of his teeth were broken. He was released because the police did not have any proof. He did not ever seek medical attention for these injuries, but fled to Canada and then the United States.

Singh testified that he would be arrested or killed if he returned to India, and that his father told him that the Hindu majority was looking for him. He did not believe that the police would protect him, because the majority of the police are Hindus.

The IJ found that Singh was not credible. The IJ found persuasive reports by the British Home Office, that acknowledged past human rights abuses against Sikhs in India, but which concluded that current claims of persecution based on being a Sikh or based on activity with the SAD Mann party are "clearly unfounded." The IJ also noted several inconsistencies between documents submitted by Singh and his testimony.

The BIA upheld the IJ's decision, and particularly found that the adverse credibility finding was proper. The BIA noted that Singh had notice of the British reports relied on by the IJ, as they had been mailed to Singh's counsel in advance of the merits hearing. The BIA also noted three specific discrepancies identified by the IJ: (1) Singh testified that he was arrested at his uncle's home on January 28, 2005, but a letter from his uncle states that Singh was arrested at Singh's own home; (2) Singh's asylum application

stated that he was released from detention in 2004 after agreeing to stop his pro-Sikh activities, but he testified, in contrast, that he was released when party members came to the police and convinced them that Singh was not involved; and (3) Singh testified that his father had warned him that the Hindu majority was after him and had visited his home, but an affidavit prepared by Singh's father made no mention of this. The BIA held that because the IJ had found Singh not to be credible, it did not find that the IJ was bound to find past persecution. Singh filed a timely, pro se petition for review.

We review factual findings, including adverse credibility findings, for substantial evidence. Chen v. Ashcroft, 376 F.3d 215, 223 (3d Cir. 2004). Under the substantial evidence standard of review, a credibility determination will be upheld unless a reasonable factfinder would be compelled to conclude to the contrary. Id. Under the Real ID Act, an adverse credibility determination can be based on inconsistencies and other factors without regard to whether they go to the heart of an applicant's claim. 8 U.S.C. § 1158(b)(1)(B)(iii). This provision applies here because Singh's asylum application was filed after May 11, 2005, the effective date of the Real ID Act.

We find that the discrepancies mentioned above are supported by the record, and that Singh did not give a convincing explanation for the discrepancies. Taken in conjunction with the British Home Office reports in the record, which note the improving situation for Sikhs in India, we do not feel compelled to conclude that Singh was credible.

4

The IJ and BIA therefore properly denied him asylum and withholding of removal.[1]

We will therefore deny the petition for review.

---

[1] We note that Singh does not challenge the denial of relief pursuant to the Convention Against Torture.